LEE MERIWETHER v. PUBLISHERS: GEORGE KNAPP & COMPANY, Appellant.

Division One, April 1, 1908.

1. **LIBEL: Pleading Context: Proof: Publication as Evidence: Variance.** The petition need set out only so much of the libelous publication as is complained of, but if the context contains an alteration or modification of the matter quoted it too should be set out. And the libel charged and the libel proved must be identical. But where the gravamen of the allegation and the gist of the charge as extended in the publication do not so radically vary as to materially alter the sense of that part of the publication alleged to be saturated with libelous poison, there is no such variance between allegation and proof as makes the publication inadmissible as evidence. Besides, in this case the petition, in other paragraphs, set forth other libelous charges single and specific, contained in the same publication, upon which plaintiff, in the absence of a good defense, could have maintained his action; and, even if the petition did not show that the context of the libelous matter was contained therein, the whole article as published and as introduced as proof did show it, and defendant thereby had the full benefit of the context which dulled the edge of the libel. The court did not, therefore, err in permitting the publication to be offered in support of the petition, although the context omitted from the petition may somewhat qualify and wrest the sense of one of the passages quoted.

2. ———: **Venue: Corporate Defendant.** A libel suit against a corporation may be brought in any one of the 114 counties of the State in which the publication circulates. The cause of action accrues in any county where the libel is published. Where plaintiff's and the corporate defendant's domiciles were and are in the city of St. Louis, and the publication was first made in that city, the suit may be brought in St. Louis county. [Julian v. Kansas City Star Co., 209 Mo. 35.]

3. ————: Malice: Other Articles. Where other articles are, in one view, allowable comments on live public questions, but, on the other hand, are personal to plaintiff, are susceptible of bearing the construction of personal ill-will to him, and, if untrue, defamatory of him, they are admissible in evidence to sustain the charge of malice.

4. ————: ————: ————: Concerning Another. Where some of the articles couple the plaintiff's name with that of another, another article devoted exclusively to a severe arraignment of such other person, is admissible in evidence to sustain the charge of malice.

5. ————: Privilege: Filing Pleadings. Neither the mere filing of an answer by a defendant in a libel suit, nor the mere filing by a plaintiff of a petition containing alleged libelous matter, is libel.

6. ————: ————: Publication: Judicial Proceedings. The publication by a newspaper of fair news reports of judicial action and proceedings on private controversies is privileged.

7. ————: ————: Pleadings: Final Action. The publication of a petition, though filed, which has not been presented to the court with a view to judicial action, is not a privileged publication. On the other hand, substantially fair news reports of the final proceedings in a cause are privileged, but such report would include not only the testimony put in to prove and disprove allegations, but necessarily the allegations of the pleadings themselves—provided the one or the other is fit for publication.

8. ————: ————: ————: ————: Intermediate Ground. But there is an intermediate ground protected by privilege, defined on the one hand · by the filing of the pleadings, and on the other by the trial finally determining the whole proceeding. A colorless publication of the pleadings and of the application for a change of venue, *in extenso* and as items of news, cannot ordinarily be considered as an independent charge of the facts alleged in the pleadings, and they cannot be said as a matter of law not to be privileged.

9. ————: ————:. ————: ————: All the Pleadings. But the omission of a part of the pleadings from the publication, especially if omitted for the purpose of misleading the public, may be malicious, and whether or not it is, is a question for the jury. So that, where the plaintiff had sued defendant for libel, and upon the filing of his application for a change of venue, defendant published in its newspaper the petition, its answer and the application, without comment, but omitted to publish

plaintiff's reply then on file, the court should not declare as a matter of law that the publication was not privileged, nor as a matter of law that the omission to publish the reply along with the other pleadings was malicious, but should submit the issue to the jury.

10. ———: **Paper's Report of Former Trial: Admissions.** In this suit plaintiff bases his action on the publication of the pleadings in a former libel suit which he had brought against the same defendant, and at the trial of this case the defendant tendered in evidence its report of the trial in the former case, as contained in several issues of its paper. Plaintiff admitted the report was fair with the single exception that the verdict in his favor appeared on an inside page of the paper, and thereupon the court excluded the copies of the paper offered in evidence. *Held,* that not every admission takes the place of proof, and the admission of fairness is not the same as proof of fairness, and whether or not the record of one case shall be cumbered with that of another is within the discretion of the trial court, and this court will not hold, under the circumstances, that the court committed error in excluding the copies of the paper.

11. ———: **Excessive Verdict.** Courts are fond of saying that the amount of damages for malicious libel is peculiarly within the province of the jury, but, on the other hand, they do not renounce their right to look into the amount of a verdict for evidence of prejudice or passion (that is, possible malice) on the part of the jury.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

REVERSED AND REMANDED.

*Lehmann & Lehmann* and *R. L. Shackelford* for appellant.

(1) The circuit court of St. Louis county was without jurisdiction of the case, the cause of action, if any, having accrued in the city of St. Louis. (2) The publication complained of in the petition was not the publication shown to have been made by defendant. The proof, therefore, did not sustain the allegations of the petition. Berry v. Dryden, 7 Mo. 324; Birch v.

Benton, 26 Mo. 153; Christal v. Craig, 80 Mo. 367; Wood v. Holbish, 23 Mo. App. 389; Starkie on Slander and Libel, p. 463; Odgers on Slander and Libel, p. 405; Townshend on Slander and Libel, sec. 622; 3 Phillips on Evidence, 551; Rutherford v. Evans, 6 Bingh. 451; McClure v. Publishing Co., 80 Pac. 303; Cartwright v. Wright, 5 B. & Ald. 615; Perry v. Porter, 124 Mass. 338. (3) The article entitled "Meriwether and Free Silver" was a mere comment on matters of public and political interest, was in no sense personal, did not tend to prove malice on the part of the defendant, and could have no effect except to excite partisan, political prejudice against defendant in the minds of the jury. (4) The publications concerning Edward Butler admitted in evidence were wholly irrelevant, as the publication complained of was or was not libelous without regard to the character of any previous publications by defendant concerning Butler. (5) The publication made by defendant was privileged as the report of a judicial proceeding. Newell on Slander and Libel, p. 471; Odgers on Slander and Libel; Barber v. Dispatch Co., 3 Mo. App. 377; Kimber v. Press Association (1893), 1 Q. B. 65; Thompson v. Powning, 15 Nev. 195. (6) Evidence that defendant made a fair report of the pleadings, proceedings and trial of the first libel suit was competent to show good faith in the publication complained of herein. (7) The instructions as to the plea of justification and as to damages in case the plea was not sustained, were erroneous, inasmuch as the publication complained of consisted of distinct, several and independent matters, and yet the instructions are that the plea fails entirely unless all the matters are justified, and they authorize a recovery of damages because of the entire publication if any part of it is libelous. 18 Am. and Eng. Ency. Law, 1070. (9) It was not libelous to speak of the plaintiff and Butler as allies in politics, and the

fifth instruction asked by defendant should have been given. (10) The verdict under all the circumstances of the case is grossly excessive. Crashley v. Press Pub. Co., 179 N. Y. 27.

*Lee Meriwether pro se.*

(1) (a) Suits against corporations may be brought in the county where the cause of action accrues (sec. 997, R. S. 1899), and the cause of action accrues in any place where the act may be completed. Defendant might print a million copies of libelous charges regarding A. B., and A. B. would suffer no harm so long as the million copies remained in defendant's office; but send only one copy to St. Louis county and the recipient of that copy has his mind poisoned against A. B.; *eo instanter* A. B. is injured in St. Louis county; the cause of action accrues in that county; and, if the publisher be a corporation, it may be sued in St. Louis county. (b) Where a court has jurisdiction of the subject-matter of the action, an answer to the merits will give jurisdiction over the person. Peers v. Railroad, 59 Mo. 406; Posthlewait v. Ghiselin, 97 Mo. 424. Moreover, the want of jurisdiction, if any, appeared on the face of plaintiff's petition, hence defendant should have demurred. The point could not be saved by pleading want of jurisdiction simultaneously with answer to petition. Newcomb v. Railroad, 182 Mo. 707; Bank v. Railroad, 119 Mo. App. 7; Bankers' Life v. Shelton, 84 Mo. App. 638. (2) Evidence of previous publications is admissible to show malice. Hall v. Jennings, 87 Mo. App. 633; Newell on L. & S., p. 336, sec. 41; Barrett v. Long, 3 H. L. Cas. 413; Odgers on L. & S., p. 272; Meriwether v. Knapp, 120 Mo. App. 383. (3) Publications of pleadings before trial are not privileged. Newell on L. & S., p. 471; Odgers on L. & S., p. 147; Barber v. Dispatch Co., 3 Mo. App. 382. Defendant's answer was not involved in the application for change

of venue; its assertion that in publishing that answer it did so merely to keep the public posted as to the progress of the case is a hypocritical pretense. That answer was filled with venomous falsehoods about plaintiff; by publishing those falsehoods in the St. Louis Republic defendant was able to traduce plaintiff before a hundred thousand people. And plaintiff had to remain mute; it was a deliberate assassination of plaintiff's reputation. And now defendant has the hardihood to assert that it spread those venomous falsehoods before the public merely as a routine reporting of a law case. The answer defendant published in its newspaper on December 15, 1903, was not up for judicial determination until April, 1904; at any time prior to April, 1904, it was perfectly within defendant's power to withdraw that answer and file another and totally different one. Were defendant's contention the law, it could have charged plaintiff with murder, arson and all the other crimes in the calendar; by the mere filing of an answer containing those charges it could have published those charges to the world. The whole world might have read in the newspapers that plaintiff had murdered his brother and burglarized his neighbor's house and committed arson in the bargain. And plaintiff would have no redress, not even though defendant should long before the trial withdraw the answer containing those horrible charges and file another answer altogether. The mere statement of the results that would follow such a construction of the law is sufficient to condemn it. Nixon v. Dispatch Printing Co., 112 N. W. 258.

LAMM, J.—From a judgment for $10,000, entered on a verdict of a jury in the circuit court of St. Louis county, assessing $5,000 compensatory and $5,000 punitive damages for libel, defendant appeals.

Plaintiff has long resided in St. Louis, is an au-

thor, a magazine writer and a member of the bar of good character and bearing an honored name—following the profession of an attorney as his regular means of livelihood. He was at one time State Labor Commissioner of Missouri and at another held a Federal position charged with the duty of writing reports on the labor situation in this country and abroad.

The defendant is a domestic business corporation having its principal office and place of business in the city of St. Louis and at the times in hand owned, printed, published and circulated an influential daily newspaper known as "The St. Louis Republic." On December 15, 1903, its average daily circulation was 100,885 in Missouri and throughout Illinois, Iowa, Arkansas and Kansas and generally throughout the United States and some of these subscribers resided in St. Louis county.

The present suit grew out of a former one for libel between the same parties. As the former suit is often referred to in the record, it will hereafter be called the "first case." After many incidents, nisi, plaintiff recovered judgment in his first case for $5,000 compensatory damages in the Lincoln Circuit Court, remitted $500 of the amount, and the case ultimately reached the St. Louis Court of Appeals, where the judgment was affirmed. [120 Mo. App. 354]. That case came about in this way: On September 27th, 1902, defendant published in its said newspaper an editorial under the caption of "Meriwether and His Friends." The libel was based on strictures made upon plaintiff in that editorial and suit was begun by him in the circuit court of the city of St. Louis for damages. Such steps followed that the issues were made up, defendant had applied for a special venire, and an order had been passed directing such panel of jurors be summoned. We take it, one had been summoned. At any rate, the day was set for trial, to-wit,

on December 14th, 1903; and on that day plaintiff filed an application for a change of venue and one went. It was hard on the heels of this incident in the first case that defendant published in its said newspaper on December 15th, 1903, matter as follows, viz.: (1) Plaintiff's petition in his first case; (2) defendant's answer to that petition; and (3) plaintiff's application for a change of venue. It is out of that publication the present libel suit grew—the complaint being of alleged libelous matter contained in the published answer.

The suit at bar was brought in the circuit court of St. Louis county. It was conceded at the trial that the first publication of the St. Louis Republic on the day in question was not in the county but in the city of St. Louis. It will serve no wholesome purpose to embalm in our records the *minutiae* of the serious charges and counter-charges, the criminations and recriminations of the pleadings, *nisi,* and of the briefs of learned counsel here. Possibly one way of avoiding taking on color or heat is to ignore with even-handed judicial serenity the color and heat abounding on all sides, and it may be that "Touch not, Taste not, Handle not" is a motto to be observed with profit in this instance.

Any facts, any averments, any instructions given or refused and any rulings on the admissibility of evidence pertinent to vital questions made here will appear with the discussion and determination of those questions.

I. Defendant insists there was a fatal variance between the pleadings and the proof. The point arose at the trial when plaintiff sought to put in evidence the article charged as libelous. In that connection counsel said: "I further object to the introduction of the article because it is not published as set out in the petition in this case. It is offered as I understand in support of the petition, and I object to it as not

the publication complained of in the petition. . . . .
My objection is that the article taken in itself in its
entirety isn't the same as set up in your petition.''
This objection was overruled and defendant excepted.

It seems plaintiff counted on parts of the pub-
lished answer of defendant in the first case as bearing
a libelous edge or sting. He accordingly selected such
parts as, in his judgment, he could prove libelous, and
such matter is set forth in his present petition in ex-
cerpts from defendant's entire answer as published
on December 15th, 1903, omitting other averments of
the answer. In fact there is nothing in the petition
ear-marking the libelous matter as part of a pleading
in court at all.

Defendant insists the petition should have shown
that the libelous matter was contained in a pleading
filed in court; and this because (they say) the very
publication showed a controversy coming on for judi-
cial trial and determination between parties litigant.
"It showed," say counsel, "to whosoever read it that
what was alleged upon one side was denied upon the
other. The entire publication was calculated to cause
a suspension of the judgment, because the subject-
matter of it was shown to be in controversy. Very
different in its effect upon the mind of any reader
would be a distinct and independent charge of the mat-
ters alleged in the answer.'' Continuing, counsel say:
"What plaintiff counts upon has in its context an en-
tirely different significance than when wrested there-
from and stated as a distinct and independent charge.
But the matter is not only taken from its context but
it is garbled as well. The complete paragraph is not
given, and the omissions are not simply of sentences
but of parts of sentences, as parallel columns will
show. Take the first paragraph of the allegel libel as
set forth in the petition and as contained in the actual
publication (the omitted matter being italicized):

"IN THE PETITION.

" 'The plaintiff, as a public man assumed to stand for higher and purer methods in politics and in public life, and denounced the older existing political organizations . . and assumed and pretended that his, the plaintiff's, purpose in politics was to purify and exalt the same, when in truth and in fact such professions on his part were tricks and falsehoods resorted to for the purpose of serving his own ends.'

IN THE PUBLICATION.

*'And this defendant avers that said publication so made and concerning the plaintiff as a politician and public man was true in substance and fact, for that* the plaintiff as a public man assumed to stand for higher and purer methods in public life and denounced the older existing political organizations, *to-wit, the Republican and Democratic parties, as wholly unworthy of public confidence, and denounced the Supreme Court of Missouri and other officials of the State as dishonest and corrupt, and denounced this defendant as untruthful in its advocacy of Democratic principles and candidates* and assumed and pretended that his, the plaintiff's, purpose in politics was to purify and exalt the same, when in truth and in fact such professions on his part were tricks and falsehoods resorted to for the purpose of serving his own ends.' "

The foregoing is sufficient of the record to develop the point, and justifies the following observations:

If the alleged libel was wholly contained in the matter in the first parallel column, there would be some force in the contention of counsel, for it cannot be denied that the part omitted somewhat tends to qualify the meaning of the part set out, and it must be admitted that a somewhat different construction might be put upon the whole charge as shown in the second column.

The sensible rule laid down by TINDAL, C. J., in Rutherford v. Evans, 6 Bing. C. P. 451 (19 E. C. L. 128) is this: "We take the rule to be as it is laid down in the books, that if the omission of any part makes a material alteration in the sense of the part inserted, such omission is fatal."

In Cartwright v. Wright, 5 B. & Ald. (King's Bench), 615, BAYLEY, J., said: "The case of Tabart v. Tipper establishes that a mere omission in setting out part of a libel is not fatal, unless the sense of that which is set out is thereby varied. Here there are two omissions, and the sense is thereby altered."

Odgers states the doctrine the same way on the strength of the Rutherford and Cartwright cases. [Odgers on Libel and Slander (2 Eng. Ed.), p. 529.] He there says: "But in other cases it is not necessary to set out the whole of an article or review containing libelous passages; it is sufficient to set out the libelous passages only, provided that nothing be omitted which qualifies or alters their sense. If, however, the meaning of the libelous passages taken singly is not clear, or if the rest of the article would, in any substantial degree, vary the meaning of the words complained of, the whole must be set out."

So far as our research goes there seems to be accord among standard text-writers and in well-rea-

soned cases to the effect that the foregoing general rule is the correct one. That rule in its just results simply means that the libel charged and the libel proved must be identical—that descriptive matter may become of the substance. Looked at in this way, the rule is merely a reformulation of the primer rule that the proof, on one hand, and the allegation, on the other, must correspond. Tested by it as a touchstone, the sense of the matter in the passage quoted by counsel, as said, may be somewhat wrested by the plan adopted by plaintiff. It may be admitted that plaintiff came dangerously close to the boundary line by his omissions. But the gravamen of the allegation of the petition and the gist of the charge as extended in the publication, after all, do not so radically vary as to materially alter the sense of that part of the publication said to be saturated with the libelous poison. If, now, we consider, as we must, that the petition in its other paragraphs sets forth other alleged libelous charges, single and specific, upon which plaintiff could have maintained his action, in the absence of a good defense, should it be held that the trial court erred in excluding the offered evidence? Attending to this last phase of the case, in addition to the charge in the foregoing matter, plaintiff fairly points out six other specifications of alleged libel summarized by him in his brief as follows:

"2. That it was a trick and a falsehood for plaintiff to assert abhorrence that his name should be associated with that of Edward Butler.

"3. That plaintiff had repeatedly associated with said Butler for the purpose of promoting his, plaintiff's, political fortunes.

"4. That in the municipal campaign of 1901, plaintiff sought the aid of said Butler to secure the withdrawal of candidates from the municipal owner-

ship ticket upon which plaintiff himself was a candidate for mayor of the city of St. Louis.

"5. That in the campaign of 1902 plaintiff again sought said Butler's aid and proffered to Butler's friends five nominations for justice of the peace.

"6. That in 1897 plaintiff went to a mass meeting and made an impassioned appeal for money; and, the better to induce the audience to contribute, that plaintiff prior to said mass meeting gave money and jewelry to divers persons and instructed them, immediately upon the conclusion of plaintiff's appeal for money, to rush up to the stage with said money and jewelry; and that by means of this trick plaintiff did induce many persons to make *bona fide* responses to his impassioned appeal for money.

"7. That in the municipal campaign of 1901 plaintiff sought to get one Albert Gebhardt to withdraw from the municipal ownership ticket, upon which he was nominated as candidate for city marshal of St. Louis, and that plaintiff gave as his reason for wishing Gebhardt to withdraw that Butler wanted one of his men on the ticket in Gebhardt's place and would give plaintiff $1,000 to get Gebhardt to withdraw."

Finally, if the petition did not show that the libelous matter was contained in a pleading, yet the whole article as published and as introduced in proof did show that undisputed fact to the jury. So, too, if the petition did not set forth the context of the libelous matter, and which context may have a little dulled the edge of the libel by way of mitigation, yet defendant had the full benefit of such context and mitigation when the article went in evidence. Mitigation is statutory matter of defense. [Sec. 636, R. S. 1899.]

The premises considered, in our opinion the ruling, *nisi,* was well enough. The point is, therefore, disallowed to defendant.

II. By a motion overruled, and again by a para-
graph in its answer, the jurisdiction of the circuit court
of St. Louis county was challenged by defendant. The
theory underlying this challenge is that the cause of
action, if any, accrued in the city of St. Louis, the
place of plaintiff's and defendant's domicile, and where
publication was first made. The theory of plaintiff
is, in effect, that the cause of action accrued in any
one of 114 counties of the State where publication was
made, and that plaintiff (casting his eye to all points
of the compass) could select, as a *ruse de guerre,* any
one of such counties in which to bring his action and
draw to that case all other publications of the issue
of the St. Louis Republic for December 15, 1903.
On this theory, he brought his suit in St. Louis county
and proved publication there.

The question now up was lodged in the case of
Julian v. Kansas City Star Co., 209 Mo. 35. It was
a new and anxious question in the Julian case—"a
virgin" (to borrow the figure of a great jurist) "wear-
ing all its maiden blushes." Being new and anxious,
it is there a bone of contention most learnedly picked
bare—being argued by eminent counsel holding briefs
on retainer and by yet others as *amici curiae.* Every
bearing of it was gone over by this court In Banc with
the result of holding, by a majority opinion, that, in
effect, under our statutes the person who thinks him-
self aggrieved by a libelous publication made by a *cor-
porate* defendant has the initial and crowning advan-
tage of picking and choosing his forum, provided he
can prove publication in the county of his choice. That
decision does not mean that such defendant can be fet-
tered to a jury drawn from the body of that particular
county as a captive to a stake. Oh my, no! To the
contrary, the corporate defendant that by virtue of
being a corporation is denied the benefit of the gen-
eral statutory provisions relating to the service of

summons on individual libelers and is held to follow its publication to any county selected in which publication was made, is, after suit brought, allowed the advantage of the general provisions of law relating to changes of venue. Thus, plaintiff's first move in selecting the forum may be somewhat tempered by a jurat. We say *somewhat*, because a shrewd plaintiff may have his eye on both a fire of prejudice and also a frying pan close by. Accordingly, if the fire of prejudice be too hot in the county selected the corporate defendant has the privilege accorded of jumping from the fire into—but no matter about that. The situation, viewed good naturedly, is thus brought within the doctrine of Sterne's pretty conceit relating to tempering the wind to the shorn lamb. But all this is afield—is but perfume from a crushed flower.

The inquiring student in the science of jurisprudence may read in that case all that can be said pro and con on that question. Precedent, the philosophy of the matter, the plain good sense of the thing, the statutory provisions involved—all passed under close review, together with cognate constitutional questions. That case has gone to the Supreme Court of the United States and until that court (if ever) reverse it, or until my learned brethren on later and maturer reflection (if ever) explode its doctrine, or until the Legislature (if ever) takes the matter in hand, it is the law of Missouri. The writer joined the dissent voiced by his brother Graves in that case. That dissent was a stroke while the iron was hot, *i. e.,* it was timely—if unavailing. To blazon forth my unreconciled individual views at this late day would be but to write a lament as for the dead, rather than an opinion in a live case. Indeed, learned counsel for defendant by implication graciously concede the question of jurisdiction is burnt powder—old straw, not to be rethreshed with profit—and that *stare decisis* applies.

The point is ruled against defendant.

III. Plaintiff was allowed without objection to put in articles published by defendant in its newspaper from time to time; for instance, one headed "Meriwether's Skin Game;" another, "Meriwether and his Friends;" and another, "His Race is Run." Plaintiff offered still other articles published by defendant in its newspaper at other times, viz.: one headed, "Meriwether and Free Silver;" another, "Justice Cannot Neglect Him;" and another, "Nobody Knows Ed. Butler's Political Beliefs." Over the objection of defendant, these articles were admitted in evidence to sustain the charge of malice. Defendant insisted then and insists now they are proper political comments on current, live events. We need not reproduce them. In one permissible view, they are allowable comments on live, municipal questions and on matters of general political interest; such articles as a free, self-governing and self-respecting people may be instructed by. But each and all of them have another side, to-wit, one personal to plaintiff, and each and all of them (barring one or two exceptions) contain strictures susceptible of bearing the construction of personal ill-will towards him. In one sense, if untrue, they might be defamatory. They could be looked at two ways, *arguendo,* and, hence, after being enlightened by the comments of counsel, it was for the jury to judge of them as for the public weal, or as arrows feathered with malice. Malice is impalpable. It cannot be felt with the finger or seen with the bodily eye. Being a mere state of mind, in the proof of it courts have laid hold of the pronouncement: "Out of the abundance of the heart, the mouth speaketh." [Matt. 12-34 *q. v.*] Accordingly, it is settled law that other publications are admissible to prove the constitutive element of libel known as malice. The identical point was in judgment in the Julian case, *supra.* There the

book learning on it was summed up and the above rule laid down. Under the doctrine of that case, we should hold it was not error to overrule defendant's objection to the admission of those articles. One of them, "Justice Cannot Neglect Him," is aimed alone at Edward Butler and deserves separate consideration. Neither by direct statement nor remote innuendo is plaintiff referred to. The article is a polished and tremendous arraignment of the man named—not altogether *suaviter in modo*, but from end to end *fortiter in re*. Junius would have approved of its style and matter. Its admission in evidence is predicated of the theory that in order to interpret the real significance of defendant's coupling Meriwether with Butler, as the other articles do, it is first necessary to know, and fix well in mind, defendant's estimate of Butler himself. There is good reason in this view and that particular article was, therefore, properly admitted as tending to show the fact that it was defendant's rooted idea that Butler should be made to stand for all time in a public pillory for honest men to shoot out a lip and point a finger of scorn at. He being so placed by defendant, plaintiff objects to being made to stand by his side. He argues that the alleged defamatory matter placed him in that miserable plight. That was one issue in the case and, on it, the article was admissible.

The point is ruled against defendant.

IV. For its third defense, defendant's answer sets forth its entire publication of December 15th, 1903, bearing upon the first libel suit, to-wit, the petition in the first case, its answer thereto and plaintiff's application for a change of venue; and concluded that special defense as follows:

"And defendant alleges that prior to the date of said publication the plaintiff herein had sued the defendant in the circuit court of the city of St. Louis,

Missouri, and had filed a petition in said suit, as in said publication set out, and that defendant had filed an answer in said suit, as in said publication set forth, and the said cause was pending in said court at the time of said publication, and had been set for trial on December 14, 1903, and that on said 14th day of December, 1903, the plaintiff filed his application for a change of venue, as set forth in said publication, and that said publication is a substantially correct and complete report of the pleadings and proceedings in said cause had in open court on said 14th day of December, 1903, and said publication as made by this defendant in its said newspaper of the day following without malice and in good faith, as the report of a judicial procedure to be faithfully carried out to the close thereof as of a cause of public interest and importance, and not otherwise.''

There is no dispute but what the publication set forth truthfully the petition, the answer and the application for a change of venue. While headlines and catchwords were used, they are not alleged as libelous. It was shown by plaintiff, however, that on the very day the application for a change of venue was filed he had also filed a replication containing a general denial of the new matter in defendant's said answer. No mention was made of this replication in the publication. Whether this omission was of set purpose, or from oversight, is dark.

In a nutshell, defendant contends that the publication was fair, hence, privileged. The plaintiff takes the opposite view of that proposition and the trial court agreed with him, giving the following mandatory instruction in his behalf:

''The jury are instructed that the defendant in this case contends (among other things) that it published the publication complained of without any

malice, as a proper and legitimate report of a proceeding in court.

"As regards the right of defendant to make the publication, you are instructed that a newspaper has a right to publish a full, fair and impartial report of any open proceeding or trial in a court of justice where the merits of the case are gone into, and where both sides have opportunity to be heard, so that the controversy between the parties may be determined by the court; you are instructed that the mere filing of a pleading in a cause that is pending in a court does not constitute such a proceeding in open court as to entitle a newspaper to claim the privilege of publication, whether the statements contained in said pleading be true or false. In this case there is no evidence tending to show that the article complained of was a report of an open proceeding or trial in court such as to constitute a privileged publication, and therefore you will find against the defendant's plea of privilege."

Counsel for defendant argue that the change of venue was such an incident in the case, such judicial action or proceeding, as entitled defendant to give a fair news report of the pleadings and proceedings leading up to the incident.

We are of opinion that on this record the instruction was not the law; and this is so, because:

(a) In the first place, we may assume as a postulate that an answer filed by a defendant is privileged in the law, that is, he cannot be charged with libel by the mere filing of his answer in court. So, too, a plaintiff is not guilty of libel by the mere filing of a petition containing alleged libelous matter. So much is axiomatic.

(b) In the second place, the abuses incident to Star Chamber proceedings, spreading a dark story on the pages of English history, caused the doctrine to

spring up and finally become one of the fundamental verities of the modern law of libel among Anglo-Saxon peoples, that fair news reports of *judicial action and proceedings* on private controversies are privileged..

As pointed out in Ackerman v. Jones, 37 Sup'r Ct. Rep. (N. Y.) 42 (5 Jones & Spencer, 42), POLLOCK, Ch. B. in Ryalls v. Leader, Law Rep. 1 Exch. 296, discussing this subject, says: "We ought, in my opinion, to make as wide as possible the rights of the public to know what takes place in a court of justice and to protect a fair, *bona fide* statement of proceedings there." The English author, heretofore quoted, Odgers (2 Eng. Ed., p. 248), adopts the language of LAWRENCE, J., in Rex v. Wright, 8 T. R. 298, as announcing the principle upon which the doctrine rests, viz.: "The general advantage to the country in having these proceedings made public more than counterbalances the inconvenience to private persons whose conduct may be the subject of such proceedings."

It may be said the doctrine rests on the trite theory that there is danger in shade and darkness and safety in light and publicity; for was it not said by one of old that (to a certain class), The sun of righteousness should arise with healing in its wings? So, in these later days, the sun of publicity may arise with healing in its wings. The integrity of the bench and public confidence in those administering justice might be jeopardized by secret proceedings or hearings, therefore, while the public are not concerned in the preliminary formulating of claims, causes of action, charges or defenses and the filing of pleadings (all of which may be characterized as mere *indicia* of private controversies between citizens), yet when the point is once reached that judicial officers take judicial action in a cause the question assumes a phase in which the public have a vital part.

(c) Accordingly, it has been well held that the publication of the contents of a petition, though filed, which has not been presented to the court with a view to judicial action, is not a privileged publication. [Barber v. St. Louis Dispatch Co., 3 Mo. App. 377; Sutton v. A. H. Belo & Co. (Tex.), 64 S. W. 686; Park v. Detroit Free Press Co., 72 Mich. 560; Cowley v. Pulsifer, 137 Mass. 392.]

(d) On the other hand, it is the universal doctrine, not controverted by the plaintiff in the case at bar, that substantially fair news reports of the final proceedings in a cause are privileged. This would include not only the testimony put in to prove allegations pro and con, but (necessarily) the allegations of the pleadings themselves—provided the one or the other was fit for publication. So much is clear law.

(e) But there is an intermediate ground protected by privilege lying between boundaries defined on the one side by the filing of the pleadings (paragraph c) and on the other by the trial finally determining the whole proceeding (paragraph d). There has been a well marked growth in the law of libel from the earlier English cases along the line of an extension of the privilege to those incidents in a cause which necessarily involve judicial action. The difficulty is not with the general principles, but with their application to concrete cases. The adjudications abound with the nicest distinctions, subtleties, refinements and technicalities. The curious may find them discussed with acumen in Stuart v. Press Publishing Co., 83 App. Div. (N. Y.) 467; Ackerman v. Jones, supra; by Lord Coleridge, C. J., in Usill v. Hales, L. R. 3 C. P. Div. 319, et seq.; in Salisbury v. Union & Advertiser Co., 45 Hun 120; and in Kimber v. Press Assn. Limited, a case decided in the Court of Appeal, found reported in L. R. 1 Q. B. D. (1893) 65. The Kimber case, as pointed out by learned counsel, is highly instructive.

It will not be space misapplied to quote therefrom. It was a libel suit growing out of a publication of a news report of an *ex parte* application made to justices at the Guildhall, Canterbury, in open court, for the issuance of a summons for perjury which was granted but finally (and after the publication) dismissed on a hearing. The case came up to the Queen's Bench by appeal from the ruling by Hawkins, J., that the news report was privileged and directing a verdict for defendants.

The Master of Rolls, Lord ESHER, saying in part: "Next, it is said that, though the proceedings were judicial proceedings in open court, no account, however true, of what took place can be published until the justices have given a final decision. Having regard to the cases, that is not the correct way of stating the rule, because it has been held that where there are proceedings before justices which may in the result arrive at a final decision, a true and fair account of those proceedings published without malice is privileged, although it be published before the final decision is arrived at. That, I think, is the effect of the judgment in Lewis v. Levy, E., B. & E. 537. In the subsequent case of Usill v. Hales, L. R. 3 C. P. Div. 319, it would seem that Lord COLERIDGE, C. J., had it not been for the decision in Lewis v. Levy, would have held that there must be a final decision before the publication of a report of the proceedings could be privileged, but when he came to examine the series of decisions on the subject he arrived at the conclusion that some of the earlier cases had really been overruled in later days, and acting upon the principles laid down in Curry v. Walter, 1 B. & P. 525, and Lewis v. Levy, he held that a fair and correct report of proceedings on an *ex parte* application to a magistrate for the issue of a summons under the Master and Workman's Act was privileged. LOPES, J., though he treated the opin-

ion of the Lord Chief Justice with tenderness, came, I think, to the conclusion that the privilege applies to a fair and correct account of proceedings published before the final decision is arrived at, if in the end there must be a final decision. I think it must be so. If it were not, the ridiculous result would follow that, where the trial of a case of the greatest public interest lasted fifty days, no report could be published until the case was ended. I am, therefore, of opinion that where the proceedings are such as will result in a final decision being given, a fair and accurate report, made *bona fide*, of those proceedings is privileged, although it be published before the final decision is given. That being so, it is necessary to consider whether the proceedings on the application for the issue of a summons in the present case were proceedings which must end in a final decision. Now, if the magistrates refused to allow the summons to be issued, that would be a final decision of the matter. If they issued the summons there must be a further inquiry, and the matter might go on to trial. So that, at one stage or other of the proceedings, there must be a final decision of some kind or other. I therefore think that the proceedings on the application for the issue of a summons were proceedings which must result in finality of decision at one time or other. This case, therefore, is brought within the rule.''

LOPES, L. J., said in the same case: ''I agree with the judgment of the Master of the Rolls. In my opinion the learned judge at the trial was right, and this appeal ought to be dismissed. The rule of law, founded upon principles of public policy and convenience, is that no action for libel can be maintained in respect to a report of judicial proceedings, taken before persons acting judicially in open court, where the report is a fair and accurate report of those proceedings and published without malice. I think that those require-

ments were strictly complied with in the present case. Application was made to the magistrates in the ordinary and proper way for the issue of a summons for perjury against the present appellant. The application came before them in the ordinary and proper way in a place where they usually sat for the performance of their duties as magistrates, and they had a discretion to grant or refuse it. It was argued that the application was not heard in open court. . . . In the absence of any order to exclude the public the court must be regarded as an open court. I am, therefore, of opinion that the objection that this was a report of proceedings not taken in open court fails. It was next urged that this was a proceeding *ex parte,* and therefore the privilege would not attach. The cases of Lewis v. Levy, E., B. & E. 537, and Usill v. Hales, L. R. 3 C. P. Div. 319, answer that contention, and I am of opinion that that point also fails. Then it was said that, in order that the privilege should attach, there must be a final decision before a report of such proceedings as these is published. Now, there may be some expressions in Usill v. Hales which, if not looked at carefully, seem to favor that view. But, in my opinion, if the proceedings were such as must ultimately lead to a final decision there may be a report of those proceedings which is privileged. Take the case of proceedings which go on from day to day, lasting for a long period. Can it be said that no report may be furnished to the public until the proceedings are finished? I think that the proceedings here were such as must ultimately result in a final determination.''

KAY, L. J., said in part in the same case:

''I entirely agree, on grounds which, as the points raised are of importance, I would rather state in my own words. In the course of the argument the plaintiff's counsel said, and said very forcibly, that if the

privilege claimed by the defendants in this case existed, it might happen that a man's character might be destroyed or injured by *ex parte* proceedings at which he was not present, of which he had no knowledge, supported by statements not made on oath, but made by counsel, which statements the person whose character was attacked had no opportunity of denying. In the present case the application for the issue of a summons for perjury was not supported by any sworn testimony whatever. Counsel was instructed to make the application, and did make it. Mr. Kimber was not present when it was made, and did not know of the proceedings. If the privilege which is claimed exists, it is essential for the safety of the community to guard it by very strict rules. The privilege must be closely examined in order to see that, in such cases as this, there is no injustice in holding that it does exist. The application for the issue of a summons was not made at the ordinary petty sessions, but it was made before three justices, called together by the justices' clerk, and sitting in the ordinary place in which they sat as justices. No application was made to them to close the court by excluding the public, and they made no order to close the court. It was an application made to magistrates who were required to act judicially in a judicial proceeding, and it was made to them sitting in the place in which they ordinarily sat as magistrates. The public was entitled to be there, and, as I understand, some of them were there. I am, therefore, of opinion that it was an open court. What is the rule of law applicable under such circumstances? In Lewis v. Levy, E., B. & E. 537, Lord CAMPBELL says: 'We are not prepared to lay down for law that the publication of preliminary inquiries before magistrates is universally lawful; but we are not prepared to lay down for law that the publication of such inquiries is universally unlawful.' Looking at that dictum alone,

it does not necessarily follow from the facts I have stated that a report of this kind would be unlawful, or, indeed, that it would be lawful. I agree, however, that later decisions have gone much further; and I also agree that in the present case there is a possible hardship to the plaintiff in the publication of the report. But it is of such extreme importance that publicity should be given to all judicial proceedings that that consideration seems to me to outweigh what have been pointed out as the possible evils attending a publication of this kind. The matter is decided by the cases which have been referred to, and I have no doubt that the law now is that proceedings of this kind, although preliminary and *ex parte,* held in open court, may be the subject of a fair and accurate report, and that such report is privileged if it be published without malice.''

Applying the principles of law announced by those great judges it seems to me we ought not even try to escape the conclusion that the application for a change of venue and the hearing thereon (being a judicial action or proceeding looking to, or a judicial step toward, the final determination of the cause) entitled the press to publish such a news report as should be without malice. The report might well include matter descriptive of issues in the case, the parties thereto, the steps already taken and the application for a change of venue. What fairer way of describing the cause and the contentions of litigants leading up to the application for a change of venue, than by a colorless publication of the pleadings and application to change the venue as items of news? No average intelligent reader could fairly consider such publication an independent charge in a newspaper of the facts alleged in the pleadings. But, in this case, defendant did not publish the replication of plaintiff denying the averments of the answer. We cannot say as a

matter of law this omission meant malice. If it was omitted for the purpose of misleading the public into believing the averments of the answer were not contradicted by plaintiff, it would certainly bear a malicious interpretation. But if omitted by inadvertence, or because defendant believed the allegations of the petition and those of the answer taken together showed a controversy in court on all material facts alleged, we cannot say as a matter of law such omission was malicious. That question should have been submitted to the jury under proper instructions. The instruction under discussion misdirected the jury on the question of privilege and it was reversible error to give it.

V. For reasons given in paragraph 4, we think the 21st instruction of defendant relating to the question of privilege should have been given, instead of refused as it was. It was along the line of our holding on the question of privilege.

VI. For the purpose of showing defendant intended to make and was making a fair report of the proceedings in the first libel suit, it tendered its report of the trial which finally took place some months later in Lincoln county, as contained in several issues of the St. Louis Republic. The record does not show the extent of these reports nor are they brought here for our inspection. When offered, plaintiff admitted defendant's report of the final trial was fair, with the single exception that the verdict of the jury in his favor appeared on an inside page of the paper. Upon this admission, the trial court excluded the copies of the Republic offered in evidence. Complaint is made of this ruling. But we cannot see how defendant was injured by it. We shall not hold that an admission by a party litigant under any and all circumstances necessarily takes the place of proof offered to sustain a principal fact. Such holding might result in great

harm to a litigant in a given case. But on the other hand, on an incidental matter we shall not hold that the trial court committed reversible error by allowing an admission of fairness in a publication to take the place of the publication itself as proof of the fact. Whether the record shall be cumbered by much matter calculated to distract the jury's attention from the issues on trial over to the issues tried out in another case is clearly within the discretion of the trial court. The evidence in the other case would naturally tend to litter up the minds of the jury, though controlled by instructions.

VII. Defendant complains of the verdict as excessive. Courts are fond of saying that the amount of damages for malicious libel is peculiarly within the province of a jury. On the other hand, the jurisprudence of this State has hitherto proceeded along conservative lines on questions of damages and no court has ever renounced its right to look into the amount of a verdict for evidence of prejudice or passion (*i. e.*, possible *malice*) on the part of a jury. As this case must be retried, it is not necessary for us to consider the size of the present verdict since it is *functus officio*.

VIII. Other errors are assigned, but on examination we find them without substantial merit.

The cause is reversed and remanded to be retried in accordance with this opinion. *Graves, J.,* concurs; *Woodson, J.,* in result; *Valliant, P. J.,* not sitting.