FRANK L. MALLORY *vs.* PIONEER-PRESS COMPANY.

February 18, 1886.

**Libel—Charge of Embezzlement.**—A publication stating that the plaintiff had "disappeared with some of his employer's funds, and the police have been notified," may import a charge of embezzlement.

**Same—Justification—Privileged Communication.**—In an action for such a libel, evidence considered as justifying a determination that the publication was not true; also as failing to sustain a claim of privilege.

**Same—Privileged Publication.**—The publication in a newspaper of false and defamatory matter is not privileged merely because made in good faith and as an item of news.

**Same—Damage to Business—Evidence.**—The receiving of evidence as to how many persons the plaintiff, an employe, did business with, *held* not erroneous, although special damages were not pleaded.

Other questions of evidence considered.

Appeal by defendant from an order of the district court for Hennepin county, *Koon,* J., presiding, refusing a new trial.

*Babcock & Davis,* for appellant.

*Thomas Canty,* for respondent.

DICKINSON, J. This is an action for libel, the cause of action being the publication in a newspaper, on the ninth day of July, 1884, of the following article: "A young man named Frank Mallory, employed as driver and collector by A. H. Gow, has disappeared with some of his employer's funds, and the police have been notified." A verdict was rendered for the plaintiff. This appeal is from an order refusing a new trial. The only questions upon which our decision is invoked are those which we now proceed to consider.

1. It is said that the truth of the published statement was conclusively shown. This point suggests a brief statement of the facts in the case, and a consideration of the meaning to be attached to the language used. It was shown that the plaintiff had been employed by Gow in selling and delivering, throughout the city of Minneapolis, a kind of beer manufactured by Gow; that the plaintiff left such service on the fifth of July, then having in his possession and retaining

about $20 in money collected by him on account of his employer. It had been previously understood that the plaintiff was to discontinue his service after the fourth of July. He did not abscond, but remained in the vicinity, and on each of the two days prior to the publication in question he had interviews with Gow. Gow did inform the police authorities the day before the publication that the plaintiff had gone away with some of his funds, and inquired as to how he could recover the money. To a reporter for the newspaper were communicated the facts as published, and the publication followed. It also appeared that, when the plaintiff left his employment, Gow was owing him for wages a sum much larger than that retained by the plaintiff from his employer. There was also evidence tending to show that the retention of this money by the plaintiff was with the consent of an agent of Gow having authority in the matter, and as payment on account of the indebtedness from Gow to the plaintiff. Upon conflicting evidence, the determination of this fact was left to the jury, and now, in considering whether the alleged libel was a true statement of facts, we must assume it to have been correctly determined by the jury that the plaintiff had been authorized to keep the money in payment on account of his wages, and that it was no longer the property of his employer. It follows, of course, that the statement as to the plaintiff having disappeared with his employer's funds must be deemed untrue. But, again, the court submitted to the jury the question as to the import of the article, in which it was said that the plaintiff had "disappeared with some of his employer's funds, and the police have been notified." The jury were justified, from a consideration of the whole article, in ascribing to it the meaning that the plaintiff had absconded with funds of his employer, under circumstances rendering him criminally responsible. From what has been already stated as to the case, it is clear that we cannot now consider this to have been true.

2. It is claimed that the publication was privileged because made in good faith, as an item of news, and also because it was in aid of legal proceedings for the arrest of a person charged with crime. Upon neither of the grounds thus suggested can the defence of privilege be sustained. The right to publish, through the newspaper press, such

matters of interest as. may be thus properly laid before the public, does not go to the extent of allowing the publication, concerning a person, of false and defamatory matter, there being no other reason or justification for doing so than merely the purpose to publish the news.     Cooley on Torts, 219; *Sheckell* v. *Jackson,* 10 Cush. 25; *Detroit Daily Post Co.* v. *McArthur,* 16 Mich. 447 ; *Perret* v. *New Orleans Times Newspaper,* 25 La. Ann. 170 ; *Smart* v. *Blanchard,* 42 N. H. 137; *Usher* v. *Severance,* 20 Me. 9 ; *Foster* v. *Scripps,* 39 Mich. 376.

As to the point that the publication was in aid of legal proceedings against the plaintiff, it is enough to say that, not only is such a reason for the publication foreign to that alleged in the answer, where it is averred that the article was published "solely as an item of local news," but it was not shown that any criminal proceedings against the plaintiff were ever instituted or contemplated.

3. At the trial the court overruled an objection to the question addressed to the plaintiff as a witness in his own behalf, "How many customers did you have?" This is said to be error, because special damages were not pleaded.    The evidence was admissible, within the rule which, where the defamatory words are actionable *per se,* so that damage is implied, allows proof, without special averment, of such general facts as the vocation and position in life of the plaintiff, such facts bearing upon the question of general damages.    *Klumph* v. *Dunn,* 66 Pa. St. 141.    It was not admissible for the purpose of showing special damages, nor was the examination in this direction allowed to go so far as to show any ground for the recovery of such damages. The evidence received was of no different nature than would have been the proof of the extent of the plaintiff's acquaintance in the city.

4. Evidence was properly received of the fact that Gow was indebted to plaintiff when the latter left his service.    It was important, in connection with other proofs, in its bearing upon the fact, which the evidence tended to show, that the money retained by the plaintiff, when he left his employer, was so retained by authority of the authorized agent of the latter, in payment of such indebtedness, and that the act was not therefore an embezzlement.

5. Of the only remaining point here presented, the question asked of the witness Gow upon cross-examination, as to how much money

of his the plaintiff had in his possession on a former occasion to that immediately under consideration, it is enough to say that it was proper as cross-examination, although we think it also admissible upon other grounds.

Order affirmed.