JAMES L. BYRAM v. JAMES AIKEN and Another.[1]

June 8, 1896.

Nos. 10,037—(246).

| 65 | 87 |
| 74 | 88 |
| 65 | 87 |
| 85 | 212 |

**Libel—What Constitutes.**

Written publications calculated to expose a person to public contempt and ridicule, and thereby impair him in the good opinion and respect of others, are libelous, although they involve no imputation of crime.

**Rule Applied.**

The publication constituting the alleged libel considered, and *held* libelous, within this rule.

Appeal by plaintiff from an order of the district court for Redwood county, Webber, J., sustaining a demurrer to the complaint. Reversed.

*S. L. Pierce* and *John Lind*, for appellant.

*John H. Bowers* and *Somerville & Olsen*, for respondents.

MITCHELL, J. Written publications calculated to expose one to public contempt or ridicule, and thus induce an ill opinion of him, and impair him in the good opinion and respect of others, are libelous, although they involve no imputation of crime, and are actionable without any allegation of special damages. Holston v. Boyle, 46 Minn. 432, 49 N. W. 203; Dressel v. Shipman, 57 Minn. 23, 58 N. W. 684; Wilkes v. Shields, 62 Minn. 426, 64 N. W. 921. This doctrine is as old as the law of libel itself. Cropp v. Tilney, 3 Salk. 225. In this respect, libel differs from slander, where the law, in respect to our natural passions, gives no action for mere defamatory words, which it considers as transitory abuse, and not having substance and body enough to constitute an injury by affecting the reputation.

Applying this principle, and construing the language employed in the sense in which people would ordinarily understand it, we think that the article was clearly libelous. The purpose of holding up the plaintiff as an object of ridicule—one of the most potent shafts of

[1] Reported in 67 N. W. 807.

the libeler—before the public is apparent in every line. The article, by plain insinuation, if not in direct words, charges the plaintiff with disreputable conduct well calculated to impair the good opinion and respect of others towards him. It is written in that bantering and flippant style so well calculated to expose a man to public contempt and ridicule. In several places it applies the prefix "Hon." to plaintiff's name, evidently used ironically, with the apparent purpose of suggesting the idea that the writer meant "dishonorable." It clearly charges the plaintiff, by insinuation, with the dishonorable act, for selfish purposes of his own, of professing a friendship which he did not entertain, for "the possible delegate," and, having thus gotten him "in charge," so generously treating him with intoxicating liquors as to get him into a besotted condition, and then turning him over to his coadjutor at the courthouse, "without warranting his future conduct," where occurred that disgusting scene so artfully touched up by that innuendo, rather than direct statement, which characterizes the whole article. It is perfectly plain that the writer, from start to finish, intended to charge the plaintiff with conduct that was calculated, not only to expose him to ridicule, but also to beget contempt for, and an evil opinion of, him in the minds of all right-thinking people. The claim that the article was an honest and legitimate criticism by a newspaper of the conduct and motives of a candidate for office is palpably sham. The publication related to the plaintiff's private character and conduct, and, being discommendatory, it was uncalled for, and presumably malicious and false. Townshend, Sland. & L. § 130.

Order reversed.