ROBERT D. BERG v. ST. PAUL CITY RAILWAY COMPANY.[1]

December 29, 1905.

Nos. 14,496—(138).

**Assault upon Passenger.**

An action to recover damages for an assault alleged to have been committed upon the plaintiff by the defendant's employees, who were in charge of a car on which he was a passenger. *Held*, where the act of a defendant, which is the subject-matter of the action, is shown to have been wanton, or malicious, or fraudulent, or oppressive, and of such a character as to indicate that he acted with a reckless disregard of the rights of the plaintiff, the jury in their discretion may award to the

[1] Reported in 105 N. W. 191.

96 M.—33

plaintiff, in addition to his compensatory damages, such further reasonable sum as exemplary damages as they may deem just; but the plaintiff is not entitled to such damages as a matter of legal right in any case.

**Evidence.**

The evidence herein does not show a case for exemplary damages.

Action in the district court for Ramsey county to recover $1,000 for assault incident to an alleged unlawful attempt to eject plaintiff from a street car of defendant. The case was tried before Orr, J., and a jury, which rendered a verdict in favor of plaintiff for $550. From an order denying a motion for a new trial, defendant appealed. Reversed.

*Munn & Thygeson,* for appellant.

*Albert Schaller* and *Otto Kueffner,* for respondent.

START, C. J.

On December 16, 1904, the plaintiff was a passenger on one of the street cars of the defendant. A controversy arose between him and the conductor of the car as to whether he had paid his fare, and this action was brought to recover damages for an alleged assault upon the plaintiff by the employees of the defendant as a result of such controversy. A trial of the cause resulted in a verdict for the plaintiff for the sum of $550. The defendant appealed from an order denying its motion for a new trial.

It is here contended on behalf of the defendant that the trial court erred in submitting the question of exemplary damages to the jury, for the reason that the evidence was not sufficient to establish a case for the allowance of exemplary or punitive damages, because "there was no wantonness or wilfulness in the conduct of the trainmen that would authorize the assessment of punitive damages," and, further, that the instruction as given was erroneous in any event. The trial court submitted the question of exemplary damages to the jury in these words:

> In the event that you should find that the plaintiff was a passenger for hire, and, notwithstanding that his transportation had been paid for and that the conductor of the car, knowingly understanding the fact that he had paid such fare, then and in that event committed an assault, in the line of his duty, upon the plaintiff, the company in that event would be liable for punitive or exemplary damages, for all those damages which are in

addition to the other damages which followed and flowed naturally as the proximate result; but it is only in these exceptional cases where it appears that it is wantonly and maliciously done.

Even if the evidence warranted the submission of the question to the jury, this instruction was technically inaccurate; for while the trial judge did not say to the jury that if they found the facts as stated the plaintiff would be entitled to exemplary damages, yet he did say that the defendant would be liable for such damages, omitting the qualification, "in the discretion of the jury." The correct rule is that where the defendant's act which is the subject-matter of the action is shown to have been wanton, or malicious, or fraudulent, or oppressive, and of such a character as to indicate that he acted with a reckless disregard of the rights of the plaintiff, the jury in their discretion may award to the plaintiff, in addition to his compensatory damages, such further reasonable sum as exemplary damages as they deem just; but the plaintiff is not entitled to such damages as a matter of legal right in any case. Lynd v. Picket, 7 Minn. 128 (184); Gardner v. Minea, 47 Minn. 295, 50 N. W. 199; 1 Joyce, Damages, § 118.

The contention of the plaintiff that the attention of the trial court should have been called to the fact that the instruction was too broad, hence misleading, we do not consider; for we are of the opinion that the first objection to the instruction made by the defendant is valid. The verdict of the jury establishes the fact that the plaintiff had paid his fare, and therefore the conductor had no right to eject him from the car; but it does not necessarily follow from this that the conductor, "knowingly understanding" that the fare had been paid, wantonly or maliciously and in disregard of the plaintiff's rights attempted to eject him from the car. His conduct must be judged by the facts as he understood them at the time the controversy arose. He may have been mistaken; but such fact alone is not sufficient to justify exemplary damages. The plaintiff's own testimony indicates quite clearly that the conductor honestly believed that the fare had not been paid and that it was his duty to eject him. The plaintiff's version of the affair was this:

> I got on the car, as usual, at Gibbs avenue and Langford, at seven o'clock, or near about, and stood out on the back platform smoking. It was a warm morning; and as I got on the conduct-

or opened the door and collected my fare. Then he went up to the front end of the car and started collecting fares, and come back and handed out his hand again for another fare. I informed him that I had paid my fare, and he said to the contrary, that I hadn't, and was going to put me off the car. So when we got to Hamline avenue he stopped the car and was going to put me off. I refused to get off, and he caught me around the neck and was going to shove me off the car, through the gates, and I held on to the rail there, and he kept pushing, and I struck him, and he rang the bell, I think, and the motorman came back to the platform, and grabbed me around the neck, and was going to put me off. And just then a man from inside the car spoke up in my defense.

On his cross-examination he testified as follows:

Q. You say you did strike the conductor? A. I did. Q. You gave him a good "swipe," too, didn't you? A. Well, I was being pushed off the car. Q. Answer that question. Did you give him a good swipe? A. I struck him in the face. Q. So that he bled profusely? A. I don't know how hard he bled. Q. Well, he bled, didn't he? A. I think so. Q. You saw the blood run down from his nose, over his moustache, and down his clothes? A. I think the blood run from his nose. Q. And you swiped him again, didn't you? A. I believe I hit him more than once. Q. You hit him three or four times, didn't you? A. I might have.

He also testified that he told the conductor he had paid his fare and was going to stay on the car and ride down town; that he was roughly handled and struck by the motorman when he came to the assistance of the conductor, and that he struck the motorman; that further hostilities ceased upon the protest of the passengers, and the plaintiff stayed on the car and rode to his destination. The conductor testified that the plaintiff did not pay his fare, and was requested several times to do so, and told that he must get off at Hamline unless he paid his fare; that he refused to do either, and when the car stopped at Hamline he took the plaintiff by the arm and told him he must pay or get off, and pushed him towards the gates; then the plaintiff struck him.

We are of the opinion, upon the plaintiff's own testimony, accepting it as true, as we must for the purposes of this appeal, that a case was not made for the imposition of punitive damages.  It follows that the instruction of the trial court was prejudicial error, for which a new trial must be granted.

Order reversed, and new trial granted.