LIVINGSTON A. LYDIARD v. DAILY NEWS COMPANY OF MINNEAPOLIS.[1]

February 11, 1910.

Nos. 16,400—(91).

Action for Libel.
    The gist of an action for libel is the damage occasioned to the reputation or general character of the party attacked by the publication.

[1] Reported in 124 N. W. 985.

**Character — Reputation.**

The term character, as used in the statute and in the decisions in libel actions, is synonymous with reputation.

**Truth of Charge a Defense.**

When a person is charged in a publication with the commission of some specific offense, the publisher may, when sued for damages, allege and prove that the offense was committed; but it is not permissible to establish the fact by alleging and proving other acts of wrongdoing.

**Plaintiff's Bad Character a Defense.**

The defendant in a libel action may, as a defense and in mitigation of damages, prove the bad character of the plaintiff; but such proof cannot be established by evidence of the commission of specific offenses not charged in the publication.

**Striking Out Portions of Answer.**

The question before the court being whether certain portions of the amended answer should not be stricken out as irrelevant, frivolous, and not defensive, *held*, the court was justified in striking out the amendment, for the reason that the facts pleaded were irrelevant, and not defensive, and not a compliance with the previous order of the court requiring names and places to be stated.

Action in the district court for Hennepin county to recover $25,000 damages for libel. The words published appear in the opinion. The substance of the answer is given in the opinion. Plaintiff's motion to strike out portions of the answer and to make other portions more specific was decided by Frederick V. Brown, J. Plaintiff's motion to strike out portions of the amended answer and to specify the names of the councilmen and the places of debauchery therein referred to was decided by Brooks, J. Plaintiff's motion to strike out subdivisions (e) and (f) of the second amended answer was granted by Dickinson, J. The substance of paragraphs (e) and (f) is stated in the opinion. From the order of Dickinson, J., plaintiff appealed. Affirmed.

*Wilson & Mercer,* for appellant.

*John H. Steele,* for respondent.

LEWIS, J.

Action for libel. Respondent was a candidate for the office of

sheriff, and on September 14, 1908, the day before the primary election in Hennepin county, appellant published and caused to be circulated in the Minneapolis Daily News the following article:

"Not to forget the gang's city clerk—the man from whose office bold, bad burglars stole $463; in whose office the words 'AT THEIR OWN EXPENSE' disappeared from the free street wire ordinance between the time it was passed and the time it was printed; the man whose reports of committee meetings are such no man by them can prove or disprove what happened at the meetings; the man who votes aldermen who are not present when the roll is called in the council; the man in whose interest the gang's tail, from city sealer and sidewalk inspectors to street commissioners and health inspectors, are campaigning at the expense of the city; the ready tool and errand boy of the City Hall gang for many years, L. A. Lydiard, what will you do to him?

"Are you going to assist by your vote to nominate and elect this man sheriff of Hennepin county, where he can perhaps become a part of another gang? Or will you help wipe the slate clean and permit him to join his fellows in that pit of oblivion they all so richly deserve?"

Appellant moved to strike out certain portions of the complaint, which was denied, and then, answering, it denied any malice; alleged that the publication was true, made in good faith, and was privileged; and alleged certain facts in mitigation of damages. Thereupon, on motion of respondent, certain portions of the answer were ordered to be made more specific, and appellant served an amended answer, which, among other things, contained the following:

"That the said gang used various means of corrupting unsuspecting councilmen, such as inducing them into compromising and dissipating positions under the influence of liquor in order to have a club over them for future voting; that as a part of said work of said gang, said plaintiff would get some of the 'faithful' and 'doubtful' into places of debauchery while they were drunk, and himself pay for their dissipation and persuade them to do acts in violation of the laws

then in force in this city, that he and said gang might hold those acts above such 'doubtful' ones when sober to coerce them into voting against the interests of the said city."

Respondent then made a motion to strike out this portion of the answer, on the ground that the same was irrelevant, frivolous, inconsistent with the theory of defense, that it did not constitute a defense, and, in case the motion to strike out be denied, to require appellant to make the answer more specific as to names of such places and councilmen. The court struck out certain portions of the answer, and in respect to the portion above quoted ordered appellant to amend the answer by specifying the particular names of the councilmen and the debauchery therein referred to, and in case of the failure to so amend within ten days from the date of the order that portion of the answer to be stricken out.

Appellant again answered: "(e) That the said 'gang' and conspirators, including the plaintiff, used various means of corrupting unsuspecting councilmen, such as inducing them into compromising and dissipating positions under the influence of liquor, in order to do what is known among grafters as 'buffaloing' them, to get a club over them for future voting against the interests of said city * * * "— and further alleged that the "gang" enticed some of the "faithful" and "doubtful" members of the council into places of debauchery for the purpose of influencing them to vote against the interests of the city, and, admitting that some of the exact dates and some of the names of the parties were unknown to appellant, stated in detail alleged facts connected with a trip to St. Paul, when respondent and certain of the aldermen made a visit to a certain saloon, became intoxicated, and visited various places of dissipation and ill repute, and alleged on information and belief that the "gang" and respondent took a number of the aldermen to a certain resort in Minneapolis for the purpose of influencing them to vote against the interests of the city. The names of the aldermen and the dates were not given. The amendment closed with this paragraph: "(f) That plaintiff's own character was such in said specific matters and others that he would not be and was not damaged by any portion of said publication."

Respondent moved to strike out the amendment, on the ground

that it was irrelevant and inconsistent with the theory of the defense, was not defensive, not in mitigation of damages, and that the facts therein stated were not privileged. At the hearing on the motion appellant objected, on the ground that it had specified the names of the councilmen and the places in accordance with the former order of the court, and that respondent was estopped from again moving to strike out the same.

The principles of estoppel and res adjudicata have no application to the facts. As the pleading then stood it was indefinite in the matter specified, and merely because respondent was content with an order requiring specific names and dates on the first motion this did not prevent him from moving to strike out the entire amendment upon the second motion. The question before the trial court on the second motion was not alone whether appellant had complied with the former order in stating specific dates and names, but also whether the answer, as amended, was entitled to stand as against a motion to strike out as irrelevant and not defensive. We are satisfied that the order of the court striking out the entire amendment should be sustained upon either theory.

There was no attempt to comply with the order by stating names and dates. The amendment amounts to no more than an attempt to set forth, upon information and belief, certain specific, independent acts of wrongdoing, and did not successfully plead any matter of defense in mitigation of damages, justification, privileged communication, or otherwise. There is nothing better settled in the law of libel than that the gist of the action is the damage occasioned to the reputation or general character of the party attacked by the publication. Evidence of specific acts of wrongdoing is not admissible for the purpose of proving general character or reputation. When the published article charges the commission of some specific act, then the publisher may prove the truth of that particular act in mitigation of damages, or in justification; but it is not permissible to sustain such a charge by proof of other acts of wrongdoing.

Appellant admits the publication, and in mitigation of damages, or in justification, may prove the facts charged within the proper rules of evidence applicable to such cases. But because respondent went

on a drunken debauch with some of the aldermen does not tend to prove that he stole the city's money, that he voted aldermen at the council meetings in their absence, or falsified the public records, or justify the inference that he was one of a gang of conspirators to take advantage of the city.

The term "character" has a dual meaning. It may refer to a person's private life, about which the public may have no knowledge, or it may mean the character a person enjoys by reputation. In libel actions, "character" is synonymous with "reputation." Such is the uniform holding of our own and other courts. The bad character of a plaintiff in a libel action may be shown in mitigation of damages; but such character must be established, not from particular and specific acts of wrongdoing, but from such person's general reputation in that respect in the community in which he lives. Davis v. Hamilton, 88 Minn. 64, 92 N. W. 512. See also Mahoney v. Belford, 132 Mass. 393; Parkhurst v. Ketchum, 6 Allen (Mass.) 406, 83 Am. Dec. 639; Folwell v. Providence, 19 R. I. 551, 37 Atl. 6; Wilson v. Noonan, 27 Wis. 598; Muetze v. Tuteur, 77 Wis. 236, 46 N. W. 123, 9 L.R.A. 86, 20 Am. St. 115; Tribune Assn. v. Follwell, 107 Fed. 646, 46 C. C. A. 526.

Affirmed.