## MICHAEL LINNEHAN, JR. v. MARTIN J. SHEERAN.[1]

### October 28, 1921.

### No. 22,283.

**Slander — when charge against third person is admissible to show malice.**
    Evidence of a slander uttered by defendant against a third person in no way connected with the suit, is generally inadmissible, but it is admissible to show malice, if the defamatory words contain the same implication as those sued upon, relate to a transaction in which plaintiff and the third person were equally concerned and by innuendo charge both with the crime of larceny committed by them jointly.

[1]Reported in 184 N. W. 835.

Action in the district court for Waseca county to recover $7,500 for slander. The answer denied the slanderous words. The case was tried before Childress, J., and a jury which returned a verdict for $100. Defendant's motion for judgment notwithstanding the verdict was denied, and on rehearing his motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Henry M. Gallagher,* for appellant.

*Moonan & Moonan,* for respondent.

LEES, C.

This is an action for slander which resulted in a verdict for plaintiff. Defendant has appealed from an order denying his motion for a new trial.

The defendant and the plaintiff and his brother Dan are neighboring farmers. The Linnehan brothers live on and work their father's farm. In the fall of 1916 they lost some calves. Hearing there was a stray calf on the premises of a neighbor named Bluhm, they went there to see whether it was theirs and were directed by Bluhm to go to his pasture where he said they would find a stray calf running with his own. They went, found a calf which they picked out from the others and took with them, claiming it belonged to them. Bluhm consented to their taking it. Defendant had likewise lost some calves and he too went to Bluhm's place in search of them and learned that the Linnehans had been there and taken a calf away. Thereupon he went to their farm to see it. Plaintiff had marked it by splitting or clipping its ear. Seeing this, defendant told him that he had his calf and had stolen it and went to the county attorney to have him arrested. The county attorney refused to issue a criminal complaint, and the defendant commenced a replevin action in the municipal court of Waseca to get possession of the calf. The animal was rebonded and the Linnehans retained possession. While the replevin action was pending defendant's brother-in-law and one of his neighbors interceded to bring about a settlement. Their efforts were successful, defendant dismissing the action and leaving the calf with the Linnehans, on condition that they pay the costs he had incurred. Plain-

tiff paid $29 as such costs. The value of the calf according to the defendant was only $13.

After that defendant met the Linnehans from time to time and twitted them about the calf. On one occasion at the village store he said to Dan Linnehan: "Did you see any calves tonight?" At another time he said to plaintiff: "This is a pretty cold night to be clipping ears," and at another: "Hello, old calf nipper." This last remark provoked a fight between the two men. Defendant admitted that he had made the remarks above set out and that they referred to the calf incident. He also admitted that he had no love for the Linnehans and intended to charge plaintiff with having taken his calf.

A witness for plaintiff testified that at the village of Waldorf in May, 1917, following the fight between the parties, he heard defendant say to plaintiff that he was a calf thief and he could prove it and that there were quite a number of persons present at the time. Dan Linnehan was a witness for his brother and was asked this question on his direct examination: "Did you meet him (defendant) at any time * * * subsequent to the settlement when he referred to * * * calf nipping or calf picking?" Objection was made and overruled and defendant excepted. The answer was "yes." When asked what defendant said the witness replied: "He called me a calf picker." Before cross-examining the witness defendant's counsel moved that this evidence be stricken, on the ground that the language, if used, did not refer to plaintiff, but to one not a party to the action. Plaintiff's counsel stated that it was offered to show defendant's state of mind as to both brothers; that they had gone together to get the calf and were working the farm together where it was taken and kept. The motion to strike was denied. No exception was taken, but in his motion for a new trial defendant specified as error the court's refusal to strike this evidence. Solely because of alleged error in these rulings, the defendant asks us to reverse the order denying him a new trial.

There is some doubt whether the state of the record and the assignments of error are such as to present the question raised, but we will treat it as before us for determination on the merits.

Counsel for defendant is undoubtedly correct in saying that it is er-

ror to permit the plaintiff in a slander case to prove that defendant slandered third persons, whether or not the defamatory language used was similar to that spoken of the plaintiff. The rule is thus stated in Newell, Slander & Libel, § 972: Evidence of slanders uttered by defendant against third persons in no way connected with the suit, is inadmissible, for the reason that it is contrary to the established rule of the common law that one cannot be proved guilty of the offense for which he is on trial by showing that at another time he committed the same offense. Cochran v. Butterfield, 18 N. H. 115, 45 Am. Dec. 363, and Sullivan v. O'Leary, 146 Mass. 322, 15 N. E. 775, are cited as and are ample authority for the statement in the text, if a proposition so plain needs support by adjudged cases. But, if the slander relates to a person connected with the plaintiff in the identical transaction which gave rise to defendant's defamatory statements, a different situation is presented. Defamatory language may be used with reference to two persons, as, for example, partners or members of the same family, and may relate to a subject with which both were connected. If an action is brought by one, although the language was addressed to or spoken of the other, may it not be put in evidence as tending to show the animus of defendant toward both?

Here defendant was repeating the charge that he had been deprived of his property by the joint acts of plaintiff and his brother. If one was a thief, so was the other. Without discriminating between them, he directly or indirectly accused each of stealing. His utterances referred to the same transaction in which both were equally concerned. The defamatory words contained the same implication as those sued upon, related to the same subject and were repetitions of the same accusation. In defendant's mind the two brothers were joint wrongdoers, and the jury might well find that the ill-will, manifested by his remarks to and concerning one, extended equally to the other. In no proper sense was Dan Linnehan a third person in no way connected with the slander which was the basis of the action, and hence we conclude that the evidence under consideration does not fall within the scope of the general rule above stated. Our conclusion is supported to some extent by the following cases: Gribble v. Pioneer Press Co. 34 Minn. 342,

25 N. W. 710; Larrabee v. Minnesota Tribune Co. 36 Minn. 141, 30 N. W. 462; Fredrickson v. Johnson, 60 Minn. 337, 62 N. W. 388; Fullerton v. Thompson, 123 Minn. 136, 143 N. W. 260. See also Newby v. Times Mirror Co. (Cal. App.) 188 Pac. 1008-1016 and Meriwether v. Knapp & Co. 211 Mo. 199, 109 S. W. 750, 16 L.R.A.(N.S.) 953-959. The order appealed from is therefore affirmed.