AUGUST F. KRIENKE v. CITIZENS NATIONAL BANK OF FARIBAULT AND ANOTHER.[1]

February 20, 1931.

No. 28,274.

[1]Reported in 235 N. W. 24.

*A. B. Childress* and *Fowler, Carlson, Furber & Johnson,* for appellants.

*Smith & Coughlin* and *Gallagher, Madden & Gallagher,* for respondent.

DIBELL, J.

Action for malicious prosecution of a criminal proceeding. There was a verdict for the plaintiff for $3,150, and the defendants appeal from the order denying their motion for judgment notwithstanding or a new trial. After the verdict and pending the appeal the plaintiff died, and his special administrator, August F. Krienke, was substituted in his place in this court.

■ To maintain an action for the malicious prosecution of a criminal proceeding the plaintiff must prove that the action was instituted by the defendant maliciously and without probable cause; and it is a defense that the one instigating the proceeding reasonably and in good faith put the facts before the prosecuting officer fully and fairly and that a prosecution was advised by the officer. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5724, et seq.

■ On April 14, 1925, the plaintiff gave his six months note to the defendant bank for $1,777. The negotiations were had with the president, Joseph J. Rachac, one of the defendants, who was an officer of the bank and had been connected with it for 20 years. The plaintiff had not done business with the bank before. He came to the bank with Michael Ferch, who had done business with the bank for a number of years and then owed it $5,502.86. Before taking the note the plaintiff was required to make a property statement. It was made on a Federal Reserve Bank form. In it the plaintiff was represented to be the owner of 165 acres in Big Stone county worth $8,250, 160 acres worth $4,000, 350 acres in Lake county worth $3,500, and personal property worth $2,000, making a total of $17,750, and a net of $15,973 after deducting the $1,777 note. The plaintiff was very deaf. Ferch, according to the plaintiff, did the talking, told what property the plaintiff owned, and placed the value upon it. Rachac wrote in the description and the value given by Ferch. There had been some talk between the plaintiff and Ferch before about his helping him out by giving a note to the bank. Ferch's indebtedness to the bank, according to the testimony of Rachac, was regarded at least as slow. When the note was given $1,500 was credited on the Ferch indebtedness. The disposition of the $277 is uncertain. Rachac thinks it was paid to the plaintiff, but he has no definite recollection. The plaintiff says he did not get it. The jury could believe him. The transaction at the bank was quite a Ferch and Rachac affair. Ferch is not a witness. No money passed unless the $277 did. The books show that $1,500 was credited to Ferch. They do not show where the $277 went if it did go.

The note was not paid. · On November 22, 1926, judgment was entered in favor of the bank for $1,993.85. An execution was issued and returned unsatisfied. Proceedings supplementary to execution followed. The plaintiff on April 23, 1927, made a disclosure before a referee. He stated, according to the report of the referee which he subscribed, that some of the personal property described in the property statement was heavily encumbered and at the time of the disclosure was gone; that he did not know the description of the 165 acres in Big Stone county; that he did not know the description of the 350 acres in Lake county; that he did not know the description of the land in Saskatchewan, Canada, but no such land was mentioned in the property statement; that he did not know from whom he bought the land in Big Stone county or whether a deed was recorded; that he did not know whether he had any interest in any of the Big Stone county lands; that they were heavily encumbered; that he did not know that he ever had absolute title; and that two years before he deeded a tract of land in Lake county to a relative of Ferch. There is no other reference to the Lake county land.

Some time before May, 1927, when the court convened in Rice county, Rachac consulted with the county attorney. He produced the property statement and the disclosure. The county attorney advised that a crime had been committed. G. S. 1923 (2 Mason, 1927) .§ 10388. The jury could find that Rachac greatly failed in telling the whole story. He appeared before the May, 1927, grand jury. The plaintiff was indicted for obtaining credit by a false property statement. Nothing was done for a while. The plaintiff was in Minneapolis. He was later arrested and lodged in jail in Minneapolis and was taken thence to Faribault and was in jail there until released on bond. He had one or more conferences with Rachac. He says that Rachac told him that if they, probably referring to his friends, would pay up he could get out of jail. On November 3, 1927, he gave the bank a quitclaim deed to some Big Stone county land. Under date of November 9, 1927, the defendants wrote the county attorney as follows:

"We are all fixed up at this end regarding the Krienke matter and it will be satisfactory to us to have the action dismissed. Thanking you we are

"Respectfully yours
"Citizens National Bank
"By J. J. Rachac, Pres."

The indictment was then dismissed on the motion of the county attorney. He had found evidence that the plaintiff had some sort of title to some Big Stone county land, and probably communicated with Rachac prior to the letter above quoted.

The evidence sustains a finding of the existence of all the elements essential to constitute malicious prosecution. The plaintiff was 60 years old. He had defective hearing. His testimony is not clear. It seems doubtful whether he understood just what was going on. He was unable to tell clearly what the transaction really was. He had been a sort of itinerant minister or exhorter in his earlier years until his infirmity intervened. Afterwards he farmed and later became interested in real estate. A jury was justified in thinking that Ferch took him to the bank; that doing this was in the interest of Ferch and the bank; and that he was putty in the hands of Ferch and Rachac. It might well have thought that the plaintiff appreciated little of what was going on and had no thought of doing wrong. The ultimate question was one of fact and for the jury, which was justified in finding malicious prosecution for which the defendants were liable.

In its general charge the court, referring to the disclosure in supplementary proceedings and a letter relative to the Big Stone county lands, said:

"Those exhibits were received only for the purpose of showing what statement the defendant Rachac made to the county attorney. They are not here for any other purpose, and you should receive them and consider them only for that purpose. The purpose of those exhibits was to show to the grand jury what statement was made to the grand jury by the defendants and what statement was made to the county attorney when the criminal prosecution was

instituted and for the purpose of showing whether the defendants made a full, fair, and complete statement of the case to the county attorney and to the grand jury in instituting the prosecution, and I will ask you to consider those exhibits for that purpose in deciding that question."

The statute provides that a disclosure in supplementary proceedings cannot be used against the defendant in a subsequent criminal proceeding. G. S. 1923 (2 Mason, 1927) § 9452. The disclosure in evidence could not have been used against Krienke on the trial of the indictment. There seems no good reason why a fact obtained from the disclosure should not be considered in determining probable cause.

At the close of the testimony, upon an inquiry by the court whether there were omissions or inadvertences, counsel for the defendants said:

"Well, we think that the exhibits that were received in evidence were admitted upon the question of probable cause also, Your Honor.";

and the court answered:

"Well of course under the instructions to the jury on probable cause and advice of the county attorney or counsel, that is included on the question as to whether or not the defendants made a fair statement to the county attorney, as to whether defendants acted in good faith and with probable cause and without malice. The jury will so understand that instruction."

No request was made by the defendants for a more specific instruction. The jury retired and later returned. There was a colloquy of some length between the court, counsel, and some of the jurors. Mostly the talk was about the sufficiency of the disclosure made by Rachac to the county attorney upon which the defendants largely relied as a defense. There was confusion. The jury was confused on this point. Reference was had to the supplementary disclosure, relating generally to the disclosure to the county attor-

ney, and probable cause was mentioned once with perhaps a suggestion of the bearing of the disclosure upon it.

The burden of proving want of probable cause was upon the plaintiff. There was little evidence of probable cause. With all that Rachac knew there should have been no prosecution. Considering the state of the record, there should not be a new trial for the failure more specifically to refer to the effect of the disclosure on proof of want of probable cause.

■ The verdict was for $3,150. Krienke suffered humiliation and was deprived of his liberty for a short time. These are elements of actual damage. It is a case proper for punitive damages. They are for the jury. The amount is large, and we are of the view that a conditional reduction to $2,000 should be made. The order is affirmed on condition that within 20 days after the going down of the remittitur the plaintiff consent to such reduction, in which event judgment will be entered for that sum and interest from the date of the verdict; and if he does not the case will stand for a new trial.

Affirmed on condition.