## BRONSON STEEL ARCH SHOE COMPANY v. T. K. KELLY INVESTMENT COMPANY.[1]

March 27, 1931.

No. 28,203.

[1]Reported in 236 N. W. 204.

*M. H. Boutelle* and *A. H. David,* for appellant.

*Lars O. Rue* and *Ohman, Fryberger & Wangaard,* for respondent.

HILTON, J.

Defendant appeals from an order denying its motion for a new trial.

Defendant was the owner of the Calhoun building in Minneapolis. Certain ground floor space was occupied by plaintiff under a written five-year lease, beginning April 1, 1927. During the term of that lease plaintiff also commenced to occupy, under a like lease, space on the second floor of the building described as "one-half of room No. 205 in Calhoun Building at 711 West Lake street."

Room 205 was large and extended across the north part of the the building. It had formerly been used for lodge purposes. The part thereof rented by plaintiff was used as a printing establishment in connection with its shoe business on the first floor; some commercial printing work was also done by plaintiff therein.

The evidence discloses that the north one-half of room 205 was the space agreed upon as covered by the lease. This space plaintiff took possession of and occupied until the happenings later referred to; plaintiff also occupied a small office adjoining the east end of the room.

Plaintiff's property located in the occupied second floor space was such as is usually found in a printing establishment and included presses, composing stones, embosser, folder, type cabinets, stitcher, tables, paper cutter, furniture, supplies, etc.

Considerable feeling arose between the parties relative to the removal by defendant of certain of plaintiff's signs in front of the building. Relations were strained.

The second lease among other things provided:

"The said lessee agrees to permit said lessor or lessor's agent, contractors or employees to enter said premises at all reasonable times,

\* \* \* to make repairs, alterations or improvements to building or parts, a part of which is herein leased, and insert such tools, appliances and pipes as they may deem necessary for the purpose of making said repairs, alterations and improvements, said lessee hereby waiving any and all claims and demands for loss or damage or diminution of rent on account thereof \* \* \*."

About a year after plaintiff took possession under the lease here involved defendant desired to make extensive changes on the second floor, among which were the changing of the entrance to the rented premises and the cutting off of over ten feet from the east part thereof by placing an inclosed hall therein and by eliminating the office space occupied by plaintiff. Defendant insisted that plaintiff move and occupy a differently shaped space of equal area in room 205 which plaintiff did not desire; plaintiff refused.

A carpenter employed by defendant, in the daytime on February 28, 1929, began to make the changes by cutting a hole in one of the walls. Plaintiff objected, and the workman desisted. That night after plaintiff had closed up its place of business and at about ten o'clock, unknown to plaintiff and without its consent, nine workmen employed by defendant entered the premises and made the planned alterations. They finished the work about six o'clock in the morning. Certain partitions were torn down and other like permanent ones built. The work done was of a substantial nature.

Much of plaintiff's property was removed from its then location and a part thereof placed in an undesired portion of room 205. Considerable damage resulted from such moving and from dust, grit, and plaster settling on the equipment and stock. Some type was pied. The testimony and photographic exhibits disclosed the disordered and disarranged condition in which plaintiff found its property the next morning. The printing plant was temporarily put out of commission. This action was to recover compensation for damages sustained.

The jury returned a verdict awarding $300 as actual damages and $2,500 as exemplary damages. The evidence warranted the amount allowed as actual damages. Defendant moved for a new

trial. Under the order of the court plaintiff consented to a reduction of the entire verdict to $800, and defendant's motion was denied.

■ One of the defenses was that plaintiff was not the owner of the personal property above referred to. That question was submitted to the jury under a proper instruction; the evidence amply supported the conclusion of the jury that plaintiff was such owner.

■ Defendant claimed that under the clause of the lease above quoted it had the right to enter the premises and to make the alterations and improvements which it made; that such entry was not made unlawfully and that whatever damages plaintiff may have suffered were waived under the lease. We cannot so hold.

A mere reading of the clause is sufficient to indicate that it did not contemplate "a major operation" such as was performed. There was no reservation of a right to evict plaintiff either from the whole or from an appreciable part of the rented premises. The purposes accomplished by the entry were just what defendant intended. It was responsible for the result. There was no dispute as to the provisions of the lease nor as to what was actually done. Whether the defendant was authorized to enter and to do as it did was a question of law to be determined by the court. On the evidence the only point in controversy other than ownership of the personal property was the actual damages sustained by plaintiff. Bell Lbr. Co. v. Seaman, 136 Minn. 106, 161 N. W. 383; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1841; 6 R. C. L. 862; 65 A. L. R. 648, et seq.

Under the circumstances the court properly charged that "as a matter of law, under the evidence in this case, the plaintiff's rights to the use of the premises occupied by it at such time, and of such machinery, equipment, and stock, were unlawfully invaded and interfered with by the defendant, and the plaintiff is entitled to recover any damages which resulted from such unlawful interference." Certainly such invasion of the leased premises and interference with plaintiff's property rights were not authorized by the lease or permitted by law.

Here there was an unlawful invasion of plaintiff's rightful possession under the lease, a forcible eviction from a part thereof, damage to plaintiff's property, and an interference with and injury to plaintiff's business.

■ Defendant complains of the court's instruction relative to "exemplary damages." It was the duty of the court to explain to the jury the meaning to be given those words and to state the circumstances and conditions under which they might be awarded. This it did. Its charge was fair and impartial and in accordance with the well settled law on the subject. The jury found under proper instructions that the acts of defendant were wilful, wanton, and malicious. The evidence warranted that finding. 2 Dunnell, Minn. Dig. (2 ed.) § 2539, et seq. and cases cited; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2540.

Whether exemplary damages should be allowed in this case was for the determination of the jury; it was a matter for the exercise by it of a sound discretion. There was no abuse thereof. The amount thereof cannot be established by any fixed rule. They are in excess of actual damages, are punitive and not compensatory; an award in one case is not determinative as to what should be allowed in another. However the amount must be kept within reasonable bounds.

The court in this case reduced the award as it had a right to do. Plaintiff accepted the reduction. Defendant has no ground for complaint. We have examined all of the assignments of error and conclude that the order of the court denying the motion for a new trial should be and it is hereby affirmed.

Affirmed.