BYRON H. HAMMERSTEN v. WILLIAM A. REILING.*

115 N. W. (2d) 259.

March 23, 1962—No. 38,211.

---

*Certiorari denied, 371 U. S. —, 83 S. Ct. 120, — L. ed. (2d) —.

*T. Eugene Thompson,* for appellant.
*Miley, Narveson & Williams* and *David W. Nord,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for libel. The jury returned a verdict for plaintiff in the total amount of $20,000, of which $12,500 was designated as general damages and $7,500 as punitive damages. This is an appeal from an order of the trial court denying defendant's motion for judgment notwithstanding the verdict or for a new trial. He contends that (1) the article published by him was qualifiedly privileged and that the requisite evidence to establish malice in its publication was lacking; and (2) the verdict was so excessive as to indicate passion and prejudice on the part of the jury.

In November 1958 plaintiff was clerk of the village of Roseville in Ramsey County and a candidate for reelection to this office. He had

held the position, which paid a salary of $6,000 per annum, for approximately 8 years. During such time defendant was a resident and property owner in the village.

During November 1958, some 30 days before election, defendant caused to be printed and distributed in Roseville approximately 1,600 to 2,000 copies of a pamphlet in which the following was printed:

"A VOTE FOR MR. HAMMERSTEN IS A VOTE
FOR ROTTEN GOVERNMENT

"Are Connivers and Real Estate promoters running Roseville to enrich themselves at the expense of our tax-paying citizens?

"A bank robber gives his victim a hearing before he robs them. The Village Council refuses to give its citizens a hearing while stealing the value of their property by rezoning adjacent property for the benefit of Connivers and Real Estate promoters.

"The 1952 Council, like thieves, sneaked through a rezoning of property for the benefit of Mr. Krannak without notifying the interested property owners. It was not surprising that this sneak method was followed, when it was discovered that the Council was to receive $1600.00 to betray the citizens. Mr. Wormsbecker was expected to pay $800.00 of this bribe.

\* \* \* \* \*

"Don't let the Racketeers run Roseville, elect a Clerk who represents all the citizens instead of a few Connivers.

"William A. Reiling."

Over defendant's objection, evidence was received that on at least two prior occasions defendant had published and distributed libelous articles of a like nature directed at plaintiff. One such article, published in 1952, set forth the following:

"CORRUPT POLITICS IN ROSEVILLE

"Today Roseville is run for the benefit of corrupt politicians. The citizens are betrayed by fraud and deceit.

"The property on Dunlap and Dionne Streets was rezoned for the benefit of unscrupulous real estate promoters, denying property owners a hearing; like thieves they sneaked through a zoning law to steal

the value of our property. Sixteen hundred dollars was to be collected and paid for this service. Mr. Wormsbecker was expected to pay eight hundred dollars of this money. Approximately 200 yards of black dirt was stolen from Dunlap Street. The Village Council knew who the guilty parties were but refused to prosecute them.

\* \* \* \* \*

"William A. Reiling."

The other article, distributed by defendant shortly before the village election in 1952, contained the following:

"CORRUPT POLITICS IN ROSEVILLE

"Elect men to office who represent the people instead of the racketeers.
"The two men listed below do not represent the people of Roseville.
  "Mr. Hammerstein                                  Mr. Willmus

\* \* \* \* \*

"Voted to rezone property \* \* \* for the benefit of unscrupulous real estate promoter, denying the people living in the vicinity a right to vote on the matter—destroying the value of their property and ruining their surroundings.

\* \* \* \* \*

"The Zoning law was passed to protect the citizens who build homes and beautify their surroundings. The Village Council uses the Zoning law to destroy your homes and your surroundings.
"Roseville hires an attorney to protect the rights of its citizens. The Village Council uses the attorney to take unfair advantage of its citizens.
"If you don't want racketeers to run Roseville, elect men to office who represent the people.

"William A. Reiling"

Plaintiff testified that he was nearly 62 years of age and had been village clerk until 1958, at which time he lost the election; that he was the Hammersten referred to in the published pamphlets. He denied all the accusations therein. He testified that in a conversation with defendant in 1955 or 1956 the latter had called him a "son of a bitch"; that since publication of the articles he had been shunned by people

in Roseville, specifying a number of times people had avoided him after the publication; and that he had been criticized by some and had suffered mental anguish because he felt that his reputation had been injured in Roseville, where he resides with his wife and son.

Defendant testified that he made and distributed the publications in the interests of good government and that he had no personal animosity toward plaintiff. However, he failed to submit any evidence establishing the truth of the libelous accusations set forth in the pamphlets described. He testified that his information with respect to the bribe referred to therein had come from a Mr. Ralph W. Wormsbecker. The latter in his testimony failed completely to establish the truth of this charge.

In his closing argument, plaintiff's counsel, in commenting on questions asked plaintiff by defendant's counsel, made the following statement which the defendant asserts constituted misconduct of counsel justifying a new trial:

"* * * Mr. Thompson [defendant's counsel] made two comments in two questions he asked * * *. He asked * * * Mr. Hammersten, * * * did Mr. Krannak ever buy you any drinks on this matter out there? No, I don't drink. Question, did Krannak ever give you anything? Well, now, I say to you this jury is going to punish Mr. Thompson for that, it didn't go over my head, I don't mind him trying a hard lawsuit and he should, but I don't like that insinuation. I remember those words, I hope the jury does. As I say to you, I think the jury will punish him for it, not in any of the damages, but hold it against him for it."

At the time, defendant asked the court to instruct the jury to disregard these remarks, which the court refused.

The trial court charged the jury as follows:

"If you find that the defendant has proved by a fair preponderance or overweight of the evidence * * * that the statements in the exhibit were true; or that he has failed to prove them to be true, and has proved that he was justified in making them because he reasonably believed them to be true, and that the exhibit was fair comment concerning the plaintiff as a public officer or as a candidate for public

office, then your deliberations will cease and you will return a verdict for the defendant. * * *

"A written or printed publication is libelous if it tends to injure the reputation of another and exposes him to public hatred, contempt or ridicule, or causes him to be shunned or avoided. * * * Under that definition Exhibit D is libelous; but it does not necessarily follow therefrom that the defendant must respond to the plaintiff in damages for the publication.

"Any citizen has a right to comment fairly and with an honest purpose on the conduct of a public official. *The publication of an article concerning a candidate for public office relative to his candidacy is one of public interest and is conditionally or qualifiedly privileged. That means that the publication of Exhibit D was privileged unless actuated by malice, that is, by ill will or improper motive or by acting carelessly and wantonly to the injury of the plaintiff. Malice is not presumed from falsity of a statement so that unless both falsity and malice existed, there is no liability.*

"Malice cannot be established by merely showing that the defendant's purpose was to prevent plaintiff's election. Proof of malice must be made by showing bad faith in the defendant; or that the occasion was made use of as a camouflage behind which to hide for the purpose of maligning a candidate in a way not justified by the facts; or personal ill feeling by evidence beyond the printed words or by the character of the printed words themselves and the mode and extent of the publication and distribution." (Italics supplied.)

With respect to the issue of damages, the trial court charged the jury:

"* * * If the plaintiff be entitled to recover, he is entitled to reasonable compensation as general damages for his anguish and injuries to his feelings and to his reputation which the evidence shows resulted from the publication. In addition thereto you may, but are not obliged to, award him punitive damages. Punitive damages are those awarded to punish a person for outrageous conduct, that is, with a reckless indifference to the interest of the plaintiff and as an example to discourage the defendant and others from similar conduct in the

future. In the assessment of punitive damages you may properly consider the nature of the defendant's conduct, the nature and extent of harm to the plaintiff which the defendant caused or intended to cause; all of circumstances including the motives of the defendant, the relationships between the parties, the provocation or want of provocation of the act and the wealth of the defendant. But punitive damages as well as general damages must be reasonable, fair and just.

"In no event may the plaintiff recover for any special damages nor for any part of the salary which he might have received had he prevailed in the 1958 election."

■ There can be no doubt but that the language used in the article published and distributed by defendant during November 1958, as above described, was actionable per se. Therein plaintiff is accused of accepting a bribe in his capacity as a member of the council of the village of Roseville for procuring the enactment of certain zoning ordinances by such council. Under Minn. St. 613.07[1] such conduct by plaintiff would constitute a crime. The publication of words imputing the commission of any indictable offense is actionable per se. Larson v. Krostue, 110 Minn. 337, 125 N. W. 262 (slander); Landon v. Watkins, 61 Minn. 137, 63 N. W. 615; Mallory v. Pioneer-Press Co. 34 Minn. 521, 26 N. W. 904. Certainly, the language of the publication could bring plaintiff into the contempt or ridicule of those citizens of Roseville who had occasion to read it and as such the publication would be actionable per se. Gadach v. Benton County Co-op. Assn. 236 Minn. 507, 53 N. W. (2d) 230; Craig v. Warren, 99 Minn. 246, 109 N. W. 231; Byram v. Aiken, 65 Minn. 87, 67 N. W. 807. See, Larson v. R. B. Wrigley Co. 183 Minn. 28, 235 N. W. 393. Further, false

---

[1]Minn. St. 613.07 provides: "Every executive or administrative officer, or person elected or appointed to an executive or administrative office, who asks, receives, or agrees to receive any bribe upon an agreement or understanding that his vote, opinion, or action upon any matter then pending or which may by law be brought before him in his official capacity shall be influenced thereby * * * shall be punished by imprisonment in the state prison for not exceeding ten years, or by a fine of not exceeding $5,000, or by both; and, in addition thereto, he shall forfeit his office, and be forever disqualified from holding any public office under the state."

accusations made against a public officeholder importing a want of integrity or corruption in office are actionable per se. Fullerton v. Thompson, 123 Minn. 136, 143 N. W. 260; Tawney v. Simonson, Whitcomb & Hurley Co. 109 Minn. 341, 124 N. W. 229, 27 L. R. A. (N. S.) 1035; Martin v. Paine, 69 Minn. 482, 72 N. W. 450; Petsch v. Dispatch Printing Co. 40 Minn. 291, 41 N. W. 1034; Annotation, 53 A. L. R. (2d) 8.

■ The accusations here made had reference to plaintiff both as a public official and as a candidate for public office and hence were prima facie privileged. Fullerton v. Thompson, 123 Minn. 136, 143 N. W. 260; Marks v. Baker, 28 Minn. 162, 9 N. W. 678; see, also, Lydiard v. Wingate, 131 Minn. 355, 155 N. W. 212. This privilege is not for the protection of the defendant, but rather in the interests of the promotion of public welfare. Matthis v. Kennedy, 243 Minn. 219, 67 N. W. (2d) 413. But the privileged character of this type of publication does not authorize publication of false and malicious statements charging a public official with crimes or misconduct in office. Fullerton v. Thompson, *supra*; Tawney v. Simonson, Whitcomb & Hurley Co. *supra*; Martin v. Paine, *supra*. In such cases, of course, the burden rests upon plaintiff to establish that the publisher was actuated by malice or improper motives or that he acted wantonly to the injury of the plaintiff. Clancy v. Daily News Corp. 202 Minn. 1, 277 N. W. 264; Friedell v. Blakely Printing Co. 163 Minn. 226, 203 N. W. 974.

■ Here it seems clear that plaintiff submitted sufficient evidence to present a fact issue as to whether defendant was motivated by malice in publishing the article described. That ill feeling existed between plaintiff and defendant, arising out of the rezoning by the village of certain lots adjacent to property owned or developed by defendant, might properly be inferred from evidence that thereafter defendant had called plaintiff a "son of a bitch," and by defendant's publication of two other pamphlets charging plaintiff with dishonesty and criminal conduct as a municipal officer in connection with the adoption of such rezoning ordinances. It is well settled that evidence of the publication by a defendant of articles of similar import to those upon which an action against him for libel is based is admissible to show malice and may be considered by the jury in determining the question of punitive

or exemplary damages. Larrabee v. Minnesota Tribune Co. 36 Minn. 141, 30 N. W. 462; Gribble v. Pioneer Press Co. 34 Minn. 342, 25 N. W. 710, 12 A. L. R. 1026. Cf. Linnehan v. Sheeran, 150 Minn. 171, 184 N. W. 835; Hansen v. Hansen, 126 Minn. 426, 148 N. W. 457, L. R. A. 1915A, 104; Reitan v. Goebel, 33 Minn. 151, 22 N. W. 291; Fredrickson v. Johnson, 60 Minn. 337, 62 N. W. 388; Severns v. Brainard, 61 Minn. 265, 63 N. W. 477. See, Annotation, 86 A. L. R. 1297. Further, no evidence was submitted to establish the truth of defendant's charges or to show that he had ever sought to ascertain the truth thereof before publication of the article involved. All the evidence of surrounding circumstances clearly gave rise to an issue relating to defendant's malice, and the jury's determination of this issue adversely to defendant cannot be disturbed here.

■ The statement by counsel for plaintiff in his closing argument that defendant's counsel would be punished by the jury for insinuating without evidentiary support that plaintiff had been given liquor to influence his vote on rezoning ordinances in our opinion was not so prejudicial as to require a new trial. At most it might be implied that the statement related to the punitive or exemplary damages sought by plaintiff, but plaintiff's counsel made it clear at the time that he did not so intend it, and in fact stated specifically that the statement did not have reference to "any of the damages." In addition, he stated, "The Judge will explain the punitive damages." Thereafter the court instructed the jury that:

"* * * you may, but are not obliged to, award * * * punitive damages. Punitive damages are those awarded to punish a person for outrageous conduct, that is, with a reckless indifference to the interest of the plaintiff * * *. In the assessment of punitive damages you may properly consider the nature of the defendant's conduct, the nature and extent of harm to the plaintiff which the defendant caused or intended to cause; all of the circumstances including the motives of the defendant, the relationships between the parties, the provocation or want of provocation of the act and the wealth of the defendant. But punitive damages as well as general damages must be reasonable, fair and just."

Under such circumstances, we doubt that the jury could have been misled on this issue. The granting or denying of a new trial for misconduct of counsel rests almost wholly in the discretion of the trial court, and here we cannot say that in denying defendant's motion therefor the trial court abused its discretion to the extent of requiring a reversal here. Bush v. Havir, 253 Minn. 318, 91 N. W. (2d) 784; Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30; Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. (2d) 433, 58 A. L. R. (2d) 921; Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614; Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814; State v. Becker, 231 Minn. 174, 42 N. W. (2d) 704; Brecht v. Town of Bergen, 182 Minn. 603, 235 N. W. 528.

■ Defendant contends that the damages awarded were so excessive as to indicate passion and prejudice. Punitive damages may be awarded where a defamation of character is published with actual malice and where the publisher has acted with a reckless disregard of the rights of the injured party. Yencho v. Kruly, 158 Minn, 408, 197 N. W. 752; James v. Warter, 156 Minn. 247, 194 N. W. 754; Hrdlicka v. Warner, 144 Minn. 277, 175 N. W. 299; MacInnis v. National Herald Printing Co. 140 Minn. 171, 167 N. W. 550, L. R. A. 1918D, 1091. Determination of the amount of an award for such damages rests almost exclusively within the province of the jury and its action therein will not be disturbed on appeal, except where the amount awarded is so excessive as to be deemed unreasonable. Smith v. Hubbard, 253 Minn. 215, 91 N. W. (2d) 756; Sweeney v. Myers, 199 Minn. 21, 270 N. W. 906; Bronson Steel Arch Shoe Co. v. T. K. Kelly Investment Co. 183 Minn. 135, 236 N. W. 204; Krienke v. Citizens Nat. Bank, 182 Minn. 549, 235 N. W. 24. See, Virtue v. Creamery Package Mfg. Co. 123 Minn. 17, 142 N. W. 930, L. R. A. 1915B, 1179; Berg v. St. Paul City Ry. Co. 96 Minn. 513, 105 N. W. 191. Here, where defendant admitted a net worth of $100,000, the award of $7,500 as punitive damages for his publication of the article designed to damage, if not destroy, plaintiff was not so excessive in our opinion as to be unreasonable.

■ However, we are convinced that the award of $12,500 for general damages was excessive. The evidence relating to this issue was

rather general and in fact limited to a few incidents which plaintiff outlined as affecting his reputation as well as his peace of mind. In our view of the entire record and the surrounding circumstances, we feel that an award of $5,000 for general or compensatory damages would have amply compensated plaintiff for any loss he has sustained in this respect. Lydiard v. Daily News Co. 110 Minn. 140, 124 N. W. 985. Accordingly, a new trial on the issue of general damages must be ordered, unless within 10 days after the filing of this opinion plaintiff shall file in supreme court a written consent to a reduction of the total verdict to the sum of $12,500. In the event of compliance with this condition, the order appealed from shall be and is affirmed.

Affirmed on condition plaintiff consent to reduction.

MR. JUSTICE OTIS, having presided at the pretrial conference, took no part in the consideration or decision of this case.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.